UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GREGORY M. QUILLIN and wife, ) | |
| HELEN QUILLIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:03-CV-151 |
| ) | (VARLAN/SHIRLEY) |
| EASTON SPORTS, INC. and ) | |
| CHUMBOLLY, INC. d/b/a THE BIKE ZOO, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM & ORDER

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Docs.116, 119] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of several non-dispositive pretrial motions.

### I.  Plaintiff's Motion for Continuance

The undersigned conducted a hearing on November 30, 2005, and scheduled a Daubert hearing for December 22, 2005. Subsequently, the plaintiff filed a motion, seeking to continue the trial date, as well as "all pending hearings." [Doc. 151]. The Court conducted hearings on December 19 and 20, 2005 to address the plaintiff's motion for continuance.

For good cause shown, the plaintiff's Motion for Continuance [Doc. 151] is **GRANTED** to the extent that the trial of this matter, which was previously scheduled for January 24, 2006, shall be **CONTINUED** to **June 13, 2006**. Furthermore, because the plaintiff contends that

there is newly discovered evidence that was discovered during the recent deposition of Lorenzo Thomson and which requires additional discovery to be taken, the Court will extend the discovery deadline for thirty (30) days. This extension, however, is only to allow the plaintiff to depose Easton witnesses about the alleged newly discovery evidence. Additionally, Mr. Thomson will be required to produce the data log which he referenced in his deposition by **January 16, 2006**.

The Daubert hearing, which was previously scheduled for December 22, 2005, shall be **CONTINUED** to **January 23, 2006 at 10:00 a.m.**

**II.     Motion to Exclude Anand Kasbekar**

Easton and Bike Zoo move to exclude the testimony of plaintiff's expert Anand D. Kasbekar on the grounds (1) that his testimony does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); (2) that his opinions were not timely disclosed pursuant to the Scheduling Order [Doc. 7]; and (3) that Dr. Kasbekar's affidavit filed in response to Bike Zoo's motion for summary judgment does not constitute a sufficient disclosure pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. Before determining whether Dr. Kasbekar's opinions are sufficient pursuant to Rule 702 and Daubert, the Court believes it is appropriate to address the issues of whether Dr. Kasbekar's disclosure is sufficient pursuant to Rule 26(a)(2) and whether such disclosure was timely.

In December, 2004, in response to written discovery, the plaintiff identified Dr. Kasbekar by name and had produced his C.V. and rate sheet. However, no expert report was submitted at that time. On October 3, 2005, approximately seven days after the expiration of the

2

deadline for disclosure of expert witnesses[1], the plaintiff served on the defendants a Designation of Expert Witnesses, listing Dr. Kasbekar as a witness to "testify as to the causation of the failure of the Easton CT2 handlebar at issue in this case." The Designation further states that a "supplemental report is being prepared as of the date of this disclosure" and would be produced. Despite the reference to a "supplemental report," no original report had ever been served on the defendants. Indeed, no Rule 26(a)(2) "report" was ever forthcoming. Instead, on October 12, 2005, the plaintiff filed an affidavit of Dr. Kasbekar in response to Bike Zoo's motion for summary judgment. [Doc. 108 Ex. 4]. This affidavit was the first disclosure of Dr. Kasbekar's opinions to the defendants.

Both defendants argue that the disclosure of Dr. Kasbekar's opinions, by way of the October 12, 2005, affidavit, was not timely and therefore, his opinions should be excluded. Plaintiff counters that the disclosure was not untimely in light of the District Court's ruling on September 21, 2005, which granted the plaintiff thirty days to respond to Bike Zoo's motion for summary judgment. [Doc. 104].

The District Court's September 21, 2005, Order resulted from the following series of events. The defendant L.H. Thomson Company, Inc. ("Thomson") filed a motion for summary judgment in January, 2005. The plaintiff did not oppose this motion; however, the defendant Easton wished to oppose it. The parties came before the undersigned on March 3, 2005, to argue, among other things, whether Easton had the right to oppose Thomson's motion. The undersigned concluded that Easton had a right to oppose Thomson's motion, as it appeared under Tennessee law

---

[1]The deadline for disclosure of expert witnesses was September 26, 2005. See Scheduling Order [Doc. 7].

that if one of the defendants were granted summary judgment on the merits, then the remaining defendant(s) would be precluded from asserting the comparative fault of the dismissed party.

Relying upon this ruling, the plaintiff contends that he did not respond to Bike Zoo's subsequent motion for summary judgment, nor did he seek to retain an expert to opine about the fault (or lack thereof) of Bike Zoo. Easton contested Bike Zoo's motion, and in August, 2005, Bike Zoo filed a reply, citing the recent decision of the Sixth Circuit in McDonald v. Petree, 409 F.3d 724 (6th Cir. 2005), in support of its position that Easton may still assert the comparative fault of Bike Zoo at trial even if Bike Zoo's motion for summary judgment were granted. As the District Court noted in a subsequent opinion, the McDonald decision was "a significant and unanticipated change in what appeared to be the law" in Tennessee. [Doc. 104]. Based on these developments, the plaintiff requested permission to file a response to Bike Zoo's motion for summary judgment. Finding that the plaintiff would be "significantly prejudiced if he was precluded from responding," the District Court granted the plaintiff thirty days, or until October 21, 2005, "to file a response to Bike Zoo's motion for summary judgment." [Doc. 104].

The plaintiff argues that the District Court's ruling implicitly extended the time for the plaintiff to produce evidence – including the testimony of expert witnesses – in response to Bike Zoo's motion. Even assuming that the plaintiff's interpretation of this ruling is correct, however, such an extension cannot be reasonably be construed to have permitted the plaintiff additional time to designate experts with respect to the plaintiff's case against Easton. Indeed, there is nothing in the District Court's Order to indicate that an extension of time to reply to one defendant's motion for summary judgment extended the time to designate experts with respect to another defendant. At the time of the District Court's ruling, the plaintiff had five days in which to make a full expert

4

disclosure of Dr. Kasbekar – an expert that the plaintiff first identified some ten months prior – or otherwise seek an extension of time to make such a disclosure with respect to Easton. The plaintiff, however, did neither.

"A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the party of the other party." Sommer v. Davis, 317 F.3d 686, 692 (6th Cir. 2003) (quoting in part Vance v. U.S., No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999)) (internal quotation marks omitted). The plaintiff has not shown that his failure to timely disclose Dr. Kasbekar's opinions with respect to Easton's fault was substantially justified or otherwise the product of an "honest mistake." Moreover, Easton did not have any knowledge of Dr. Kasbekar's opinions until October, 2005, after the expert disclosure deadline had already passed. Accordingly, the Court finds that the plaintiff's failure to disclose Dr. Kasbekar's opinions regarding Easton was not harmless, and to the extent that Dr. Kasbekar states opinions with respect to Easton, his testimony should be excluded.

The Court specifically finds that to extend the expert disclosure deadline at this juncture and thus allow the plaintiff to designate experts against Easton would be contrary to the letter and spirit of the Federal Rules of Civil Procedure and the Court's prior Orders in this case. It would further be unfair to those parties who have complied with the Rules and who have made timely disclosures. Finally, the Court finds that extending the expert disclosure deadline would unduly complicate, increase, and protract the litigation, as it would require additional disclosures

5

and/or revisions to disclosures by all parties; it would require additional discovery, including depositions, to be completed; and it would unduly delay the Court's resolution of the numerous Daubert issues in this case. For these reasons, Easton's Motion to Exclude Testimony of Proffered Expert Witness Anand D. Kasbekar [Doc. 112] is **GRANTED**.

Whether the disclosure of Dr. Kasbekar's opinions was also untimely with respect to Bike Zoo is less clear. The District Court's Order does not explicitly extend the expert disclosure deadline; however, the Court cannot say that it was entirely unreasonable for the plaintiff to assume that such an extension (at least with respect to Bike Zoo) was implied in the Court's ruling, as the plaintiff's response to Bike Zoo's motion would necessarily rely on expert testimony to create a genuine issue of material fact with respect to Bike Zoo's fault. While not necessarily agreeing with the plaintiff's interpretation of the District Court's Order, the Court finds that the plaintiff has at least shown a substantial justification for his failure to timely disclose Dr. Kasbekar and has further shown that his failure was a result of an "honest mistake." Accordingly, the Court will not exclude Dr. Kasbekar's testimony with respect to Bike Zoo on the grounds that his disclosure was untimely.

However, the question remains whether an adequate Rule 26(a)(2) disclosure was made. Rule 26(a)(2)(B) requires, with respect to an expert who has been retained or specially employed to provide expert testimony, the disclosure of "a written report prepared and signed by the witness" which contains

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the

witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).

The Court has reviewed Dr. Kasbekar's affidavit, and while not finding it to be the model of thoroughness, cannot say that the affidavit is so lacking that it should be excluded at this time pursuant to Rule 26(a)(2).[2] Accordingly, Bike Zoo's Motion to Exclude Certain Testimony of Proffered Expert Witness, Anand D. Kasbekar [Doc. 117] is **DENIED** at this time. Bike Zoo's request for a Daubert hearing [Doc. 117] is **GRANTED**. However, to the extent that Dr. Kasbekar's expert testimony is ultimately determined to be reliable and admissible under Daubert, his testimony shall be limited to the subject matter of his affidavit.

A Daubert hearing shall be conducted on **January 23, 2006 at 10:00 a.m.** with respect to Dr. Kasbekar, as well as the three other experts – Dr. Green, Dr. Fellers, and Dr. Stevenson – whose opinions and/or qualifications have been challenged in this case.

### III. Motion to Exclude Loronzo Thomson

Finally, Easton moves for an Order excluding the testimony of Loronzo H. Thomson from the trial of this matter. For grounds, Easton argues that Mr. Thomson has never been disclosed as an expert witness, and that his affidavit, which was filed by Bike Zoo in support of its Motion in Limine to Exclude the Testimony of Dr. Stevenson, purports to give opinion testimony as to the

---

[2]The plaintiff has already provided the defendants with Dr. Kasbekar's C.V. and compensation rate. However, it is unclear from the record whether a list of Dr. Kasbekar's publications or a list of other cases in which he has testified have been disclosed; if they have not, the plaintiff should provide such information to Bike Zoo prior to Dr. Kasbekar's deposition.

7

torque of the stem bolts on the subject handlebar assembly at the time of the plaintiff's accident and as to the effect of an accident on the torque of the stem bolts. [Doc. 140].

Bike Zoo opposes Easton's motion, arguing that Thomson's opinions are based upon the particularized knowledge that he has by virtue of his involvement in the design of bicycle stems and stem bolts. [Doc. 143]. The plaintiffs have joined in Bike Zoo's opposition. [Doc. 144].

Mr. Thomson is the president of L. H. Thomson Company. [Thomson Aff. ¶ 1]. He has a degree in electrical engineering and has worked in the field of mechanical engineering for many years. [Id. ¶ 2]. He led in the design of the stems manufactured by L. H. Thomson Company and has patents in his name on those designs. [Id. ¶ 3]. He led in the preparation of the torque specifications for the Thomson stems, including the Thomson stem on the plaintiff's bicycle. [Id. ¶ 4]. Mr. Thomson states in his affidavit that the Thomson torque specifications recommend that the stem bolts be torqued up to a maximum of 48 inch pounds to keep installers and consumers from over torquing the stem bolts. [Id. ¶ 5]. Mr. Thomson further states in his affidavit as follows:

> 6. Over torquing or over tightening the stem bolts may cause carbon handlebars to crack.
>
> 7. In the present case, it is very doubtful that the torque measurements taken on the bottom two stem bolts two years after the accident would reflect the torque on those stem bolts at the time of installation. At the time of the measurement of the torque on the stem bolts the handlebar was broken. Fracture of a handlebar will most likely relax the torque on the stem bolts. In other words, fracture of the handlebar will most likely cause the torque on the stem bolts to lessen.

[Id. ¶¶ 6-7].

As noted previously, the deadline for disclosing expert witnesses and opinions in this case expired on September 26, 2005. While timely disclosed as a lay witness, Mr. Thomson has

8

never been identified by any party as an expert witness in this case. Rule 701 of the Federal Rules of Evidence provides that if a witness is not testifying as an expert, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Mr. Thomson proffered testimony, as set forth in paragraphs 6 and 7 of his affidavit, is clearly not based on personal observations but rather consists of opinions and inferences drawn from his specialized knowledge gained from his involvement in the stem manufacturing industry. These opinions clearly fall within the realm of expert testimony. Because Thomson was not timely disclosed as an expert, the Court will not consider this portion of his affidavit in ruling on the pending Daubert motions. To this extent, Easton's Motion to Exclude Testimony of Loronzo H. Thomson [Doc. 140] is **GRANTED**. Whether Mr. Thomson's testimony should also be excluded at trial is a matter best left to the discretion of the District Court at the time of trial, and the undersigned will therefore defer ruling on the admissibility of such testimony at this time.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge